UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| George Colley, ) | C/A No. 7:21-cv-01094-DCC |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | ORDER |
| ISS Facility Services, Inc., ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This matter is before the Court on Defendant's Motion for Summary Judgment. ECF No. 26. Plaintiff filed a Response in Opposition, and Defendant filed a Reply. ECF Nos. 29, 30. In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 3.02(B)(2) (D.S.C.), this matter was referred to United States Magistrate Judge Jacquelyn D. Austin for pre-trial proceedings and a Report and Recommendation ("Report"). The Magistrate Judge issued a Report recommending that the Motion for Summary Judgment be granted. ECF No. 37. Plaintiff filed objections to the Report, and Defendant filed a Reply. ECF Nos. 44, 45.

**LEGAL STANDARD**

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a de novo determination of any portion of the Report of the Magistrate Judge to which a specific objection is made. The Court may accept, reject, or

modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. See 28 U.S.C. § 636(b). The Court will review the Report only for clear error in the absence of an objection. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." (citation omitted)).

## **ANALYSIS**

As an initial matter, the Court finds that the Magistrate Judge provided a thorough recitation of the relevant facts and the applicable law, which the Court incorporates by reference. Plaintiff alleges one claim for retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). As stated above, the Magistrate Judge recommends that summary judgment be granted in favor of Defendant. The Magistrate Judge assumed without deciding that Plaintiff stated a prima facie case for retaliation; she then determined that Plaintiff failed to demonstrate that the proffered legitimate, non-retaliatory reason for Plaintiff's termination was mere pretext. In its review of this matter, the Court, as it must, construes all inferences and ambiguities in the light most favorable to Plaintiff, as the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Upon de novo review of the Report, the record, and the applicable law, the undersigned agrees with the ultimate recommendation but modifies the reasoning of the Report as discussed below.

Here, as stated above, the Magistrate Judge assumed without deciding that Plaintiff established a prima facie case for retaliation. However, given that the Court's review is de novo, the Court declines to so assume.

***Retaliation***

Upon review of the Report, the record, and the applicable law, the Court finds that Plaintiff fails to establish a prima facie case for retaliation and grants Defendant's Motion accordingly.

Title VII makes it unlawful for an employer to retaliate against an employee for engaging in activity protected by the statute. See 42 U.S.C. § 2000e-3(a). Claims of retaliation are also generally analyzed under the *McDonnell Douglas* burden-shifting framework. *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 248 (4th Cir. 2000). The requisite elements for a *prima facie* case of retaliation typically include: (1) the employee engaged in a protected activity; (2) the employer acted adversely against the employee; and (3) there was a causal connection between the protected activity and the asserted adverse action. *Ziskie v. Mineta*, 547 F.3d 220, 229 (4th Cir. 2008); *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007).

To demonstrate causation, a plaintiff must show that the employer was aware of the protected activity. *See Shield v. Fed. Express Corp.*, 120 F. App'x 956, 962 (4th Cir. 2005) (citing *Luckie v. Ameritech Corp.*, 389 F.3d 708, 715 (7th Cir. 2004)). In certain circumstances, temporal proximity between the protected activity and the adverse action can be probative of a causal connection. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S.

268, 273–74 (2001) (noting that to establish a causal connection based on temporal proximity alone, the time between the employer's knowledge of the protected activity and the adverse employment action must be "very close" and holding a twenty-month period to be insufficient).

Defendant appears to acknowledge that Plaintiff engaged in protected activity and that he suffered an adverse employment action. *See* ECF No. 26-1. Defendant's arguments all address whether Plaintiff can establish a causal connection between the protected activity and the adverse employment action. For purposes of this Motion and in viewing all inferences and ambiguities in the light most favorable to the non-moving party, the Court will consider the protected activity to have occurred on January 30, 2020, and that the adverse employment action was Plaintiff's furlough on June 1, 2020.

In his Response in Opposition to the Motion for Summary Judgment, Plaintiff asserts that he was relieved of his duties as operations manager at Adidas less than four months after he engaged in protected activity. ECF No. 29 at 10. Such a time lapse is insufficient on its own to establish the requisite causal connection. *King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003) (noting that two months and two weeks separating the notice of the protected activity and the adverse action can be "sufficiently long so as to weaken significantly the inference of causation between the two events"); *Pascual v. Lowe's Home Centers, Inc.*, 193 F. App'x 229 (4th Cir. 2006) (*per curiam*) (holding that the plaintiff had failed to establish a causal connection by temporal proximity alone when "at least three to four months" separated the claimed protected activities and the

4

termination of the plaintiff's employment). However, Plaintiff asserts that demonstrations of retaliatory animus began in early March 2020. ECF No. 29 at 21–25. Plaintiff contends that Matthew Nadeau[1] cancelled all of their standing meetings and that he was removed from the Suncor account on March 3, 2020, which was within five weeks of reporting the sexual harassment. Plaintiff also reiterates that Nadeau was angry when he reported the sexual harassment.

With respect to Plaintiff's argument that being taken off the Suncor account was demonstrative of retaliatory animus, it is clear from the provided deposition testimony that there is no evidence that the decision to take Plaintiff off the Suncor account was made by any person with knowledge that he had engaged in protected activity. In his deposition, Plaintiff was asked whether he had any factual basis for his assertion that taking him off the account was retaliatory and he consistently replied that he did not. *See* ECF No. 30-1 at 10–11. Therefore, the Court finds this argument is insufficient to preclude a finding of summary judgment.

Turning to Plaintiff's argument that Nadeau cancelled all standing meetings between himself and Plaintiff following Plaintiff's protected activity, the Court also finds this assertion is insufficient to bridge the time between the protected activity and the adverse employment action. In his deposition, Plaintiff testified that Nadeau avoided him after he disclosed the sexual harassment. However, he further acknowledged the

---

[1] Nadeau was Defendant's director of operations for key accounts during the relevant time period.

cancellations were always communicated to him, often with a rational reason.[2]  ECF No. 30-1 at 15.  Plaintiff further confirmed that he had many meetings with Nadeau after he engaged in protected activity where there were other people on the conference call.  The Court finds that some cancelled meetings and some uncancelled meetings without more are insufficient create a genuine issue of material fact to preclude a finding of summary judgment.

Plaintiff also alleges that Nadeau displayed anger at the meeting during which Plaintiff disclosed the sexual harassment.  As an initial matter, this fact does not help him to establish temporal proximity.  Further, there is no evidence in the record that any anger displayed was specifically directed at Plaintiff.  Plaintiff believes that Nadeau was angry at him because he put Nadeau in a position where he had to deal with the sexual harassment issue when he did not want to.  Therefore, according to Plaintiff, Nadeau was angry at him for making the complaint.  However, the facts in the record do not clearly support this inference by Plaintiff.  Even if Nadeau was angry at Plaintiff or the situation on the day of the meeting, there is no evidence in the record that he continued to be angry or communicated that anger to anyone.  Indeed, it appears from the record that the complaint was properly referred, investigated, and ultimately resolved.  Accordingly, while

---

[2] At one point in his deposition, Plaintiff stated that Nadeau informed him that he had other meetings to attend at time of their standing meetings and that he may have had an emergency come up at one time.  He stated that "there was always something that caused him to cancel the meeting." ECF No. 30-1 at 15. Later in his deposition he seems to push back on the idea that there was always a reason for the cancellation and states that he was just informed that the meeting was cancelled. *Id.* at 16.

the Court has considered this argument and any accompanying evidence, the undersigned does not find it compelling, particularly in light of the time between the alleged anger and the adverse employment action.[3]

Because the Court finds that Plaintiff has failed to establish a causal connection as explained above, the undersigned declines to address the remaining arguments regarding causal connection.[4]

## **CONCLUSION**

Therefore, the Court adopts as modified the recommendation of the Report. Defendant's Motion for Summary Judgment [26] is **GRANTED**.

IT IS SO ORDERED.

s/ Donald C. Coggins, Jr.
United States District Judge

March 14, 2024

---

[3] Plaintiff also attempts to make hay out of the fact that his work badge was repeatedly deactivated. ECF No. 29 at 24 n.18. He acknowledges that there is no explanation for the deactivation but seems to imply it was nefarious. The only evidence in the record, beyond Plaintiff's statements that the badge was deactivated, is from Nadeau who testified that he was informed the badge was deactivated, he forwarded the issue to the proper party, and he believed that the issue was eventually resolved. ECF No. 30-2 at 25–26.

[4] The Court briefly notes the context in which these events transpired. Between January and June 2020, Defendant was in a period of transition with respect to its Adidas account, and, indeed, the Adidas account agreement was terminated by June 2020 before ultimately being renegotiated later that year. Plaintiff acknowledges that Defendant was making efforts to find other opportunities for him during this time. ECF Nos. 29-21 at 20, 41–42; 26-6 at 20.

Spartanburg, South Carolina

8